## COMMISSIONER OF INTERNAL REVENUE v. McCLOSKEY.

### SAME v. VINCENT.
### No. 7448.

Circuit Court of Appeals, Fifth Circuit.
March 25, 1935.

Frank J. Wideman, Asst. Atty. Gen., Louise Foster and Sewall Key, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Thos. F. Callahan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Percy S. Benedict, of New Orleans, La., for respondents.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals disallowing a deficiency assessment based upon the Commissioner's determination that the respondents had realized taxable gains in the acquisition of certain shares of corporate stock. The respondent taxpayers are stockholders of the D. H. Holmes Company. The theory of the Commissioner is that in 1923 the Holmes Company became the owner by purchase of all the stock of the Charles A. Kaufman Company, and in the taxable year 1927 distributed it all to its own stockholders at cost, which was less than the fair market value. His contention is that the distribution of the difference between such cost and market value constituted a distribution in the nature of a dividend to stockholders of the Holmes Company. Revenue Act 1926, § 201 (a), 26 USCA § 932 (a). The respondents deny that the Holmes Company was ever the owner of the Kaufman stock, some of which they admit they bought and still claim to own. On the issue whether the Holmes Company bought the Kaufman stock and afterwards sold it to its own stockholders, the evidence is not in dispute. The Kaufman and Holmes companies were in a limited sense competitors in business. In 1923, while the Kaufman Company was in financial difficulty and had most, if not all, of its capital stock pledged to banks as security for loans, the directors of the Holmes Company decided to acquire all outstanding Kaufman stock, whether pledged or not. At first it was intended that the Holmes Company should become the purchaser; but, since it was a Louisiana corporation and had no right under its charter or existing law to acquire by purchase the capital stock of another corporation, its board of directors proceeded to purchase all the Kaufman stock for the account of the stockholders of the Holmes Company. The directors paid for the stock they purchased with money of the Holmes Company, but the title to it was taken in the name of a trustee for the stockholders, subject to a pledge to the Holmes Company for the purchase price. The stockholders, other than the directors who held a majority of the shares, were not consulted, but were given the right to purchase Kaufman stock in proportion to the stock of the Holmes Company held by them. There was never any objection, so far as appears by any stockholder, and in 1927 some or all of them took up all the Kaufman stock, paying to the trustee the original cost of $80 per share for it, although at that time it admittedly had a market value of $135 per share. The trustee repaid the Holmes Company the amount advanced by it. During the time the trustee held the stock he collected the annual dividends thereon and paid them over to the Holmes Company. In its income tax returns the Holmes Company included these dividends and listed the Kaufman stock as an asset under the heading "investments" or "other assets," instead of under the heading "accounts receivable." There is no charge of fraud or of an attempt to evade the payment of income taxes.

The Holmes Company, in our opinion, never became the owner of the Kaufman stock. Its directors, upon being advised that the corporation itself could not legally become such owner, set about to make the purchase for themselves and other stockholders of their corporation. They used corporate funds, it is true, with which to pay the purchase price. It is also doubtless true that for this irregular and unauthorized act they could have been held individually and personally liable to the corporation or to objecting stockholders. But what was done by the officers and directors of the Holmes Company was recorded in the minutes of the directors' meetings, was done openly without any idea of concealment, and was ratified by the minority stockholders. The corporation, having accomplished indirectly what it could not direct-

ly, was satisfied to get its money back. As to outsiders or strangers, the stock transactions were perfectly legitimate. The Holmes Company, as pledgee of the Kaufman stock, was entitled to the dividends from it, and, having received them, was bound to account therefor in its income tax returns. In making up those returns the pledged stock was always listed as an asset. But conceding that the listing should have been under the special heading "accounts receivable," the most that was shown under the admitted facts was an error of bookkeeping.

The petition for review is denied.